# Hibernian Banking Association, Administrator, Appellee, v. Mrs. M. A. True, Appellant.

## Gen. No. 27,756.

1. HIGHWAYS AND STREETS—*relative rights to use of highway as between pedestrians and automobilists.* A pedestrian crossing a public highway at a crossing place who has reached a point within ten or fifteen feet of the street line is not required to wait for the passage of a string of automobiles all traveling in the same direction before attempting to complete the crossing of such highway.

2. MASTER AND SERVANT—*proof of liability under doctrine of respondeat superior.* A driver of the automobile which struck and killed plaintiff's intestate is shown to have been a servant of defendant working in her household for his board and lodging and not to have been a guest, by evidence that such driver had been living in defendant's family for several years during which time he had outside employment and was also described as a student but where it appears that he acted as door man, washed dishes, did sweeping around the house, tended to the furnace and did other things usually done by a servant.

3. MASTER AND SERVANT—*liability of master for negligence of servant acting in performance of duties.* Defendant is liable for the negligence of her chauffeur in the operation of an automobile in which she was riding where the evidence shows that although no order was given to the chauffeur to get the car on the occasion in question, he got the car from the garage and brought it to defendant's home in response to her expressed wish to make a certain call, which she was on the way to make at the time of the accident, and that the sole purpose of the use of the car at the time was pursuant to defendant's wishes and errand and that the chauffeur was merely acting for defendant.

4. TRIAL—*when verdict against only one of several defendants is proper.* A verdict finding only "the defendant" guilty is sufficient on which to base a judgment against defendant, one of three persons originally sued, where, at the trial, the jury were instructed to find the other two defendants not guilty and they took the instruction with them and signed it under the impression that in so doing they were following the instruction and finding such other defendants not guilty.

5. PLEADING—*necessity for order reinstating original after striking out amended declaration.* An order granting leave to refile or reinstate the original declaration is not necessary after leave has been given to amend the declaration which leave is subsequently

vacated and the amended declaration filed pursuant thereto stricken out.

6. PLEADING—*sufficiency of declaration against three defendants to support judgment against one only.* An original declaration which charges three defendants with negligence will support a verdict and judgment against one only of such defendants.

7. DAMAGES—*when compensatory damages properly allowed.* In an action for death of plaintiff's intestate by the negligence of defendant's servant, an award of $1,500 is supported by evidence that decedent left surviving her brothers, half brothers and a half sister and that for many years she had contributed to the support of her brothers, especially one who was an invalid.

Appeal by defendant from the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed February 19, 1923.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellant; EDWARD P. MORSE, of counsel.

JOHN A. BLOOMINGSTON, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

On the evening of August 25, 1915, Julia C. Gallagher was struck and killed by a southbound automobile as she was attempting to cross from the east to the west side of Sheridan road in Lincoln Park, Chicago. The administrator of her estate brought suit for damages and upon trial had judgment for $1,500, which defendant seeks to have reversed.

Sheridan road here runs north and south, and Miss Gallagher, accompanied by a Mr. Buckley, was crossing towards a point where another drive comes in from the west. The jury properly could believe that they had safely crossed to within ten or fifteen feet of the west line when the car in question came from the north at a rapid rate of speed; the chauffeur sounded a horn, the pedestrians stopped and stepped back, but the machine turned in an easterly direction towards them. Buckley then caught Miss Gallagher

by the arm and started to run towards the southwest in order to escape the car, but it also turned towards the southwest, struck Miss Gallagher and ran on thirty-five or forty feet, and was stopped by a tree on the lawn on the west side of the drive. The questions of the negligence of the driver of the automobile and the care of the deceased for her own safety were properly left to the jury and, we hold, were properly decided.

It cannot be too frequently said that drivers of vehicles have no rights superior to those of pedestrians using the street crossings; each must look out for the other, that accidents may not happen. Their duties in this respect are equal and mutual. This seems to have been one of those occurrences, all too frequent in Chicago, where the driver of an automobile, made dull to the rights of others by his greater power to injure them, arrogantly drives on regardless of consequences.

It is argued that the automobile which did the killing was one of a string of southbound vehicles, and that the pedestrians should have waited for them to pass before attempting to cross. The better argument is just the other way. It might be a close question whether a pedestrian should wait a few seconds for a lone automobile to pass or attempt to pass in front of it, but the argument that the pedestrian must not attempt to cross the street where there is a long line of automobiles passing, erroneously assumes that automobiles have the superior right of way and that pedestrians must wait indefinitely the pleasure of the automobile drivers before using the crossings. This is not the law.

The chief contention concerns the liability of the defendant, Mrs. M. A. True. She lived in Chicago with her daughter, Edna, who owned the car, which was kept in a garage near by. Living for some three years in this family was a Japanese, Mr. Haritsu Fugita, twenty-five years of age. He had employment

with Marshall Field & Company, and is also described as a student. He was driving the car when it killed Miss Gallagher. His status at this time with reference to the defendant, Mrs. True, is controverted. She claims he was merely a guest in her home. However, the evidence shows that at times he did many things about the place usually done by a servant, such as acting as door man, helping the maid wash dishes, sweeping around the house and tending to the furnace. It is difficult to believe that he was a guest, and the jury were justified in believing that he performed household duties for defendant for his board and lodging.

Upon the evening of the accident Edna True, the owner of the automobile, was out of town. Mrs. True expressed her wish to go with her son-in-law, Mr. Perron, to call on a relative. Mrs. True says that Fugita heard this and voluntarily went to the garage, got the automobile, brought it to the house, and she and Mr. Perron, Fugita driving, were on their way to make the call when the accident occurred.

Fugita was at this time the agent for Mrs. True, engaged not in any business of his own, but on her errand. It is not important that no particular order was given to him to procure the automobile. Evidently he did so pursuant to what was expected of him in rendering service. Perron, the son-in-law, described Fugita as "our Jap chauffeur." The purpose of the use of the automobile upon this occasion was pursuant to Mrs. True's wishes and errand, and Fugita was then her chauffeur. She is therefore liable for his negligence.

There was no reversible error with reference to the instructions.

It is said that there were three defendants in the case, but the verdict returned by the jury found only "the defendant" guilty, hence there is no proper verdict on which to base a judgment against Mrs. True.

The case was originally brought against Perron, Edna True and Mrs. H. A. True. Upon the trial the court gave the jury an instruction that they should find the defendants Perron and Edna True not guilty. The jury on retiring took this written instruction with them and all signed their names to it, evidently under the impression that in so doing they were following the instructions of the court and returning a verdict finding Edna True and Perron not guilty.

This was merely an informality. It may be reasonably construed as a verdict of not guilty as to the defendants named therein. This would leave in the case only one defendant, Mrs. M. A. True, and the verdict finding "the defendant" guilty could apply to no one else.

Leave was given to plaintiff to amend the declaration, but subsequently this order was vacated and the amended declaration filed pursuant thereto was stricken. Defendant contends that without an order permitting the original declaration to be refiled or reinstated there is no declaration in the case. We are referred to no decisions supporting this contention. Cases discussing the effect of an amended declaration in relation to the original declaration as pleadings are not in point. We know of no rule of practice which requires an order of refiling or reinstating an original declaration under such circumstances.

There is no merit in the point that the first declaration, which was against three defendants, would not support a verdict and judgment against one defendant. It has been held to the contrary in *Postal Tel.- Cable Co. v. Likes,* 225 Ill. 249.

It is said that plaintiff is entitled only to nominal damages on the ground that while decedent left her surviving two brothers and four half brothers and a half sister, there is no evidence that any of them received money from her for their support. There was sufficient evidence to justify the jury in believing that for nearly twenty-five years she had sent sums of

money for this purpose to her brothers, and especially to one brother, an invalid. We do not believe that the size of the award in a case of this kind requires extended discussion.

Upon the record the verdict was proper and as no reversible errors occurred upon the trial, the judgment is affirmed.

*Affirmed.*

DEVER and MATCHETT, JJ., concur.